IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**LYNN EVELYN DETILLION,**

    **Plaintiffs,**

    **v.**

**OHIO DEPARTMENT OF
REHABILITATION AND CORRECTION, et al.,**

    **Defendants.**

**Civil Action. 2:22-cv-2671
Judge Sarah D. Morrison
Magistrate Judge Kimberly A. Jolson**

## OPINION AND ORDER

This matter is before the Court on the Motion to File Documents Under Seal and to Manually File Exhibits (Doc. 50) submitted by Defendants Ohio Department of Rehabilitation and Correction ("ODRC") and Ohio Civil Service Employees Association, AFSCME Local 11 ("OCSEA"). For the following reasons, the Motion is **GRANTED in part and DENIED in part**. Sealing is not appropriate for Defendant OCSEA's Exhibits U-56–U-61, but the Motion is granted in all other respects. Defendants are **ORDERED** to file unsealed versions of Exhibits U-56–U-61 to the public docket within **seven days** of the date of this Opinion and Order.

### I. BACKGROUND

Plaintiff brings this action alleging several unlawful actions by her former employer, ODRC, and union, OCSEA, beginning with her termination. (*See* Doc. 1). Plaintiff worked at ODRC's Correctional Reception Center ("CRC"), "where felons are received, evaluated and subsequently transferred to their long-term confinement facilities . . . ." (*Id.*, ¶ 7). ODRC's purported reason for firing Plaintiff is that while she and her work partner were staffing a reception unit at CRC, an inmate committed suicide. (*Id.*, ¶ 8). Relevant to the instant Motion, this inmate

was believed to be a gang member, and had been assigned to an open-bed holding area with "many of his fellow gang members . . . ." (*Id.*, ¶ 9).

Defendants bring the instant Motion to file under seal or redact exhibits which accompany their Motions for Summary Judgment. (Doc. 50). The Motion was fully briefed (Docs. 53, 54), and Plaintiff then moved the Court for leave to file a surreply (Doc. 56). That request was granted, and given the press of the dispositive motion deadline, Defendants were granted permission to file their exhibits under temporary seal. (Doc. 57). Now, Plaintiff's surreply has been filed (Doc. 77) and the Motion is ripe for consideration.

**II.     STANDARD**

Courts distinguish between limiting public disclosure of information during discovery versus the adjudicative stage of a case. *See Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 305 (6th Cir. 2016). "The line between these two stages, discovery and adjudicative, is crossed when the parties place material in the court record." *Id.* (citing *Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 545 (7th Cir. 2002)). "Unlike information merely exchanged between the parties, '[t]he public has a strong interest in obtaining the information contained in the court record.'" *Shane Grp.*, 825 F.3d at 305 (quoting *Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1180 (6th Cir. 1983)). For this reason, the moving party has a "heavy" burden of overcoming a "'strong presumption in favor of openness' as to court records." *Shane Grp.*, 825 F.3d at 305 (quoting *Brown & Williamson*, 710 F.2d at 1179); *see also Shane Grp.*, 825 F.3d at 305 ("Only the most compelling reasons can justify non-disclosure of judicial records." (quotation omitted)).

"[I]n civil litigation, only trade secrets, information covered by a recognized privilege (such as the attorney-client privilege), and information required by statute to be maintained in

2

confidence (such as the name of a minor victim of a sexual assault), is typically enough to overcome the presumption of access." *Shane Grp.*, 825 F.3d at 308 (citation and quotations omitted). "[T]he seal itself must be narrowly tailored to serve" the reason for sealing, which requires the moving party to "analyze in detail, document by document, the propriety of secrecy, providing reasons and legal citations." *Id.* at 305–06 (quotation omitted). Ultimately, the movant must show that "disclosure will work a clearly defined and serious injury . . . . And in delineating the injury to be prevented, specificity is essential." *Id.* at 307–08 (internal citations and quotations omitted). If there is a compelling reason, "the party must then show why those reasons outweigh the public interest in access to those records." *Kondash v. Kia Motors Am., Inc.*, 767 F. App'x 635, 637 (6th Cir. 2019) (citing *Shane Grp.*, 825 F.3d at 305). The Court "has an obligation to keep its records open for public inspection [and] that obligation is not conditioned upon the desires of the parties to the case." *Harrison v. Proctor & Gamble Co.*, No. 1:15-CV-514, 2017 WL 11454396, at *1–2 (S.D. Ohio Aug. 11, 2017) (citing *Shane Grp.*, 825 F.3d at 307.). The court "that chooses to seal court records must set forth specific findings and conclusions 'which justify nondisclosure to the public.'" *Shane Grp.*, 825 F.3d at 306 (citing *Brown & Williamson*, 710 F.2d at 1176).

**III. DISCUSSION**

Broadly, Defendants ask to seal: (1) medical and personal identifying information related to Plaintiff and third-parties; (2) information identifying prison gangs, their members, and inmate witnesses; and (3) information regarding ODRC's security policies and procedures. (*See* Docs. 50, 54). Plaintiff objects to most of these requests, saying that a recent decision by the Supreme Court of Ohio undermines Defendants' interests in sealing. (*See* Docs. 53, 77). The Court finds

3

that—except for one category of text message exhibits—Defendants have carried their burden for sealing and redaction.

To begin with, there are several compelling interests in sealing here. Defendants ask to seal Plaintiff's medical records and the medical information of third parties. "Courts have recognized a person's interest in the privacy of their health information as a legitimate basis for sealing." *Frohn v. Globe Life and Accident Ins. Co.*, No. 1:19-cv-713, 2022 WL 1555104, at *1 (S.D. Ohio May 17, 2022); *see also In re E.I. Du Pont de Nemours and Co. C-8 Pers. Injury Litig.*, No. 2:13-md-2433, 2:18 cv-00136, 2019 WL 3208711, at *1 (S.D. Ohio July 16, 2019) (noting federal and state policy favoring the nondisclosure of private health information). Similarly, Defendants ask to seal personal identifying information of Plaintiff and third parties, like social security numbers and email addresses. As Defendants suggest, this unnecessarily exposes individuals to risks of harassment and identity theft. (Doc. 54 at 9). And this interest is particularly pronounced for third parties, as the Sixth Circuit has made clear that "the privacy interests of innocent third parties should weigh heavily in a court's balancing equation." *Shane Grp.*, 825 F.3d at 308 (6th Cir. 2016) (quoting *United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995)).

Defendants also ask to seal a variety of information related to safety and security at their facilities. In particular, because the underlying incident giving rise to this action involved suspected gang activity and an open-bed holding area with several inmate witnesses, there are exhibits containing names of alleged gang members, as well as names of inmate witnesses who provided testimony about the purported suicide to ODRC administration. Defendants say that this information may unnecessarily expose third parties to harm or other harassment. (Doc. 54 at 7) (citing Ohio Rev. Code § 5120.21(D)(6) (stating that ODRC must maintain records to keep confidential "[i]nformation and data of any kind or medium pertaining to groups that pose a

4

security threat")). The Court agrees. More still, Defendants look to protect detailed descriptions of ODRC's security protocols and procedure, which they suggest could be exploited by inmates if made publicly available. (*Id.*). There is a compelling interest in protecting such security features. *See NFocus Consulting Inc. v. Uhl*, No. 2:20-cv-5106, 2020 U.S. Dist. LEXIS 260676, at *4 (S.D. Ohio Dec. 9, 2020) (finding sealing of security measure details proper "to prevent clients and malevolent third parties from using that information to undermine the security features, thereby potentially harming [the party].") (citation and quotation marks omitted).

Plaintiff says Defendants' compelling interests in sealing are undermined because some of the information may be classified as public record, or was otherwise not protected as confidential, and therefore no injury can result from its disclosure. She relies upon one instance in which inmate names and numbers were categorized as public record by the Supreme Court of Ohio. (*See* Doc. 77) (discussing *State ex rel. Sultaana v. Mansfield Corr. Inst.*, 2023-Ohio-1177, 2023 Ohio LEXIS 776). In *Sultaana*, a mother—whose son was assaulted by other inmates during his incarceration—requested public records from his prison regarding the assault. *Sultaana v. Mansfield Corr. Inst.*, 2023-Ohio-1177, 2023 Ohio LEXIS 776, at *P1. The prison redacted the names and inmate numbers of the individuals involved in the assaults when it produced the records to her, and so she sought a writ of mandamus for unredacted records. *Id.* At issue was whether the inmate names and numbers fit within a statutory exception to Ohio's Public Records Act. *Id.* at *P25–P26.

The prison claimed—as Defendants do here—that the inmate names and numbers must be redacted because of a security-threat exemption which requires ODRC to keep confidential "[i]nformation and data of any kind or medium pertaining to groups that pose a security threat[.]" Ohio Rev. Code § 5120.21(D)(6). Yet, the court found that "the applicability of the security-threat exemption is not obvious from the records themselves, and the prison has not presented any

5

evidence supporting its decision to redact the inmate names and inmate numbers as information pertaining to groups that pose a security threat." *Sultaana v. Mansfield Corr. Inst.*, 2023-Ohio-1177, 2023 Ohio LEXIS 776, at *P35. This is distinct from the instant case, in which the applicability of the security-threat exemption is apparent from the content of the exhibits themselves. The exhibits are replete with references to a gang present at CRC and identify several inmates as members. (*See, e.g.*, Docs. 65-1, 65-2).

Regarding the proposed redactions of names and statements of inmate witnesses, Plaintiff says "voluntary inmate statements or staff incident reports of statements made by or attributed to inmate witnesses . . . are *not* referenced in R.C. 5120.21." (Doc. 77 at 5). On the contrary, Ohio Rev. Code § 5120.21(D)(3) exempts "[s]tatements made by inmate informants" from public record disclosure.

Finally, Plaintiff says that she was provided—prior to this litigation—with an investigative report prepared following the inmate suicide. ODRC cannot now redact portions of that report, she says, because it consented to the report's public disclosure by producing it to her. (Doc. 77 at 6). ODRC, for its part, has represented that it believes Plaintiff "should have signed a confidentiality agreement" at the time the report was given to her. (Doc. 77-1 at 1). Still more, Plaintiff had ongoing confidentiality obligations under her employee code of conduct. (Doc. 54-1 at 10). As Plaintiff identifies, no specific confidentiality agreement regarding the report is currently in the record before the Court. (Doc. 77 at 6). But that alone is not a sufficient basis for finding that ODRC consented to the public disclosure of the report. And, as it stands, the report appears to have only been shared between the parties to this litigation. So its public disclosure—of inmate witnesses and security procedures—would still work precisely the injury identified by Defendants.

6

All told, Defendants have articulated compelling interests in sealing and redaction. And Plaintiffs' arguments that these documents should be treated like public records are unavailing.

Proceeding with the sealing analysis, Defendants have demonstrated that their proposed sealing and redaction is narrowly tailored. For the bulk of exhibits, they seek only redaction. (Doc. 50 at 5–13). And they have affirmed that the redaction is limited to only those disclosures which would cause the injuries detailed above. (*See, e.g.,* Doc. 54 at 7 ("In redacting the deposition transcripts and exhibits listed in Defendants' Motion, only the names of security threat groups, the names of said groups' alleged members, and names of inmate witnesses were redacted."); *id.* at 9 ("Defendants made sure to redact only the [personal identifying information] . . . and did not redact broad swathes of adjacent information that did not qualify as [personal identifying information].")). And, since temporary sealing and redaction was granted, the Court's own review of the redactions confirms this. In the few cases in which Defendants ask to seal whole medical files or security documents, redaction is not practicable because the documents contain entirely material which must be protected from disclosure.

Finally, the Court finds that the public's interest in these records does not outweigh Defendants' compelling interest in sealing. Notably, the parties have prepared alias nicknames for inmate witnesses to discuss their involvement without personal identifying them. (*See* Doc. 53 at 4). And the public should be able to follow the parties' arguments regarding Plaintiff's and ODRC's respective compliance with policies and procedures without knowing every detail of ODRC's security protocol. Similarly, Plaintiff's intentional infliction of emotional distress claim should be understood without laying her entire medical record bare. At base, the Court finds that the compelling interest in sealing can be accommodated without making this case illegible to the public.

7

There is an exception to the foregoing discussion regarding one category of exhibits. Defendants ask to seal Defendant OCSEA's Exhibits U-56–U-61—private text message exchanges between Plaintiff and her work partner—only because of "Plaintiff's request that any private text messages produced from Plaintiff's personal cell phone be labeled Confidential—Attorney's Eyes Only, pursuant to the Stipulated Amended Protective Order." (Doc. 50 at 6 n.2). This designation alone is not a compelling interest in sealing. And though Plaintiff does not object to sealing, she articulates no further basis for sealing. (*See* Doc. 53). Accordingly, with respect to these exhibits, the Motion is **DENIED**. Because Defendants were previously given permission to file these exhibits under temporary seal, they are now **ORDERED** to file unsealed versions of Exhibits U-56–U-61 to the public docket within **seven days** of the date of this Opinion and Order. But as to all other requests for sealing in the Motion—as well as for Defendants' requests to manually file video exhibits—those requests are **GRANTED**.

IV. **CONCLUSION**

For the foregoing reasons, Defendants' Motion to File Documents Under Seal and to Manually File Exhibits (Doc. 50) is **GRANTED in part and DENIED in part**. Sealing is not appropriate for Defendant OCSEA's Exhibits U-56–U-61, but the Motion is granted in all other respects. Defendants are **ORDERED** to file unsealed versions of Exhibits U-56–U-61 to the public docket within **seven days** of the date of this Opinion and Order.

IT IS SO ORDERED.

Date: August 2, 2023 /s/ Kimberly A. Jolson
KIMBERLY A. JOLSON
UNITED STATES MAGISTRATE JUDGE